UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-CR-20389-RKA

**UNITED STATES OF AMERICA,**

vs.

**JULIAN JIMENEZ,**

    Defendant.

_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE DRAFT PRESENTENCE INVESTIGATION REPORT AND MOTION FOR AN UPWARD VARIANCE

The government urges this Court to deny Julian Jimenez's ("Jimenez" or "Defendant") Motion for Downward Variance [ECF No. 247] and instead sentence Jimenez to a significant prison sentence for his calculated stalking and attempted murder of Alex Vega ("Vega").

This is no ordinary stalking and attempted murder. The statute does not require a "course of conduct." Thus, the statute, at its core, is violated when there is surveillance of any kind for a short period of time. Here, the surveillance occurred over the course of several days in August 2022, when Jimenez and his co-defendant, Jaime Serrano ("Serrano") conducted surveillance of Vega at his business and home. During this time, they studied Vega's pattern of life. They learned when he went to work, the route he used in between travel from work and home, and when he was with his family. They then switched cars from the one used for surveillance to a new one that would avoid detection for the shooting. In essence, they woke up every day each of those days and committed a separate violation of the statute. And this is no ordinary "intent to kill." On August 27, 2019, Jimenez walked into Vega's residential community donning a mask and gloves with a plan, and ready, to kill Vega **in front of his wife** as they walked to the local market. That part of the plan failed, but not one to abort the mission, Jimenez decided to run up to Alex Vega's

home, and wildly emptied eight bullets into his vehicle. He tried eight times to kill Vega. Three of those bullets struck Vega. The projectiles were later removed during surgery, but the emotional trauma caused by Jimenez's heinous acts will remain for years to come—including, but not limited to, Vega's use of a gun powder sniffing K-9 to this day and bullet proofing his entire vehicle.

A sentence within the advisory sentencing guidelines range would be insufficient to comply with the purposes set forth in 18 U.S.C. § 3553(a). There are several 3553(a) factors that are not adequately reflected in the Defendant's guidelines calculations. These include: (1) the nature and circumstances of the offense, (2) the need for the sentence imposed to promote respect for the law, (4) the need for the sentence imposed to afford adequate deterrence to criminal conduct, and (5) the need for the sentence imposed to protect the public from further crimes of the Defendant.

## SENTENCING PRINCIPLES

After *United States v. Booker*, 543 U.S. 220 (2005), a sentencing court need only consider the factors in 18 U.S.C. § 3553(a) and determine a reasonable sentence. *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005). We address the relevant factors below. While the Court must consider all the relevant factors, it "need only acknowledge that it considered [them] and need not discuss each of these factors in either the sentencing hearing or in the sentencing order." *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007). The Court may give greater weight to some factors than others. *See United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009). Likewise, any overlap between the grounds for a variance and the grounds for a guidelines departure is immaterial. *United States v. Hall,* 965 F.3d 1281 at 1297 (11th Cir. 2020). What matters is that the grounds the district court gave for varying above the guidelines

range fit comfortably under the § 3553(a) provisions; it doesn't matter whether they might also have fit under a departure provision. *Id.*

## JIMENEZ'S OBJECTIONS

### A. Factual Corrections and Amendment Regarding Educational Background and Employment

Jimenez made factual corrections and amendments to his educational background. [*See* Jimenez Obj. at 1-2]. The federal probation officer who created the PSR [PSR ¶¶ 47,59], received the information documented within the PSR directly from Jimenez. Jimenez also did not attach any documentation to support his "correction and amendment" from what he previously stated. Jimenez made factual corrections and amendments to his employment history. [*See* Jimenez Obj. at 2]. The Government takes no position as to this correction.

### B. Jimenez's Objection to Enhancement for Permanent Disfigurement, USSG §2A2.1(b)(1)

Pursuant to a plea agreement, the Government and Jimenez agree that a two-level enhancement for serious bodily injury applies [ECF 206 ¶ 8(b)].

### C. Jimenez's Objection to Enhancement for Offer or Receipt of Anything of Pecuniary Value, USSG §2A2.1(b)(2)

Pursuant to a plea agreement, the Government and Jimenez agree that Jimenez's adjusted offense level is 35 [ECF 206 ¶ 8(c)] and his total offense level is 33 [ECF 206 ¶ 8(d)].

## MOTION FOR UPWARD VARIANCE

A faithful application of the 3553(a) factors requires an upward variance in this case. First, looking to the nature and circumstances of the offense, an upward variance is necessary and appropriate in this case to reflect the nature and severity of the Defendant's offense, *see* 18 U.S.C. § 3553(a)(1). The Defendant's unlawful conduct in this case was heinous. The Defendant did more than discharge a firearm --- he ran up to a vehicle he could not see into and began wildly firing,

3

sending eight bullets flying into the vehicle and garage of Vega's home. Certain aspects of the Defendant's crime are also not factored into the Guidelines calculation and justify an upward variance. For example, the guidelines do not account for the different types of surveillance. Here, Jimenez and Serrano hatched an elaborate plan. Jimenez's surveillance took place over the course of multiple days and in multiple locations. Jimenez and Serrano even went through the trouble to conduct their surveillance in one vehicle which they later exchanged for another to commit the attempted murder in an effort to go undetected. Their plan was sophisticated and thought out but thankfully, poorly executed. While the statute contemplates interstate travel with the intent to kill, injure, harass or intimidate or place under surveillance for one of those same reasons, certainly, there are varying degrees of the same crime. For example, a defendant that walks into a convenience store to commit a robbery and fires one round at the clerk as he is running away commits the same crime under the law as a defendant who walks into a convenience store to commit a robbery, has the clerk kneel and shoots him execution style in the back of the head before leaving. However, the nature of these two crimes varies greatly, and the § 3553(a) factors allow the sentencing court to treat them differently. Like the second defendant in the example above, Jimenez was thoughtful and deliberate with his surveillance and attempted murder plan.

Jimenez cites his "history and characteristics" and "cognitive and intellectual deficits" [*See generally* Jimenez Obj. at 5-9] as a basis for his motion for downward variance, however, the steps taken to plan and execute his crimes directly cuts against this argument. Day in and day out, Jimenez surveilled Vega at his home and business. He never inadvertently revealed the plan. Instead, he lied to cover his true intentions.  Jimenez determined when was the right time to fly down from New York to Miami to begin his surveillance. He determined where to surveil over the course of several days. Jimenez determined when the right time was to get out of Serrano's vehicle.

4

He knew enough to cover his face with a mask and his hands with gloves before taking out a firearm and shooting. More telling: he knew to bring those tools of the trade to ensure he finished the job without detection. He knew to discard these items so that he would not be caught with them. Each one of these steps required independent plan and thought in order to accomplish. The most horrific of these steps, completed by Jimenez alone – outside the presence of Serrano—was his decision to shoot and carry out the plan. Indeed, Jimenez may have experienced difficulties as a child or a mediocre education but, make no mistake, he had the ability to understand and appreciate his actions. Defendant chose for his first criminal offense to be one that contemplated killing at least one other person.

The Court must impose a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense, *see* 18 U.S.C. § 3553(2). As noted above, the Defendant pled guilty to serious offenses. Of course, an appropriate sentence is necessary to stop this Defendant from committing other serious crimes. This factor strongly supports an upward variance in this case.

The Defendant's conduct is this case was severe. The entire shooting portion of Jimenez's crimes was captured on a home surveillance video system. Along similar lines, a substantial sentence is necessary to prevent the Defendant from engaging in this type of conduct or even more harmful conduct in the future. Lenient treatment for this Defendant will not deter him. *See U.S. v. Harrison,* 362 Fed.Appx. 958, (affirming 114-month variance from the high end of the advisory guidelines where district court concluded that the defendant posed a serious risk of danger and that the variance was needed to protect the public, promote respect for the law, and deter the defendant from committing future crimes).

Contrary to Defendant's assertions, an upward variance would avoid unwarranted sentencing disparities. A downward variance will create unwarranted sentencing disparities. Defendant cites the Judiciary Sentencing Information tool (JSIN) to determine imprisonment sentences imposed on defendants convicted of similar offenses within the last several years. However, the JSIN pages attached to Jimenez's Motion do not specifically cite to cases from within this district with their facts. Most recently in this district, in October of 2022 Judge Scola sentenced a defendant who was convicted of carjacking, possession of ammunition by a convicted felon, and brandishing and discharging a firearm in furtherance of a crime of violence to 485 months imprisonment. *United States v. Thomas Daniels*, No. 20-CR-20138-RNS. In that case, the defendant attempted to commit a carjacking that ended with the defendant robbing and shooting two victims. While that defendant was convicted at trial and had a criminal history, his crimes did not contemplate as much planning and thought as those of Jimenez.

Another recent case from this district not captured by Jimenez's statistics is one case in which Judge Martinez sentenced a defendant who pled to multiple counts of attempted murder, discharging a firearm in furtherance of a crime of violence, and assault to 310 months imprisonment. *United States v. James Robert Mills, Jr.*, No. 22-CR-20077-JEM. Here, Mills' crimes were also heinous, and he had multiple victims but most importantly he had no criminal history, like Jimenez. A message must be sent to other defendants in this district that if you commit this type of crime, a lenient sentence is not what is waiting on the other side. *See also United States v. Frankie David Vargas, II,* No. 21-CR-20479-DPG (Vargas pleaded guilty to Hobbs act robbery, brandishing a firearm, and discharging a firearm and was sentenced to 324 months imprisonment); *United States v. Jeffrey Lamar Davis,* No. 17-CR-20917-KMW (Davis pleaded guilty to two counts of brandishing and discharging a firearm in furtherance of a crime

6

of violence and was sentenced to 420 months imprisonment); *United States v. Talley et al.,* No. 10-CR-20848-CMA (Talley was convicted of bank robbery among other crimes at trial and sentenced to 384 months imprisonment.

## **CONCLUSION**

For the foregoing reasons, it is the Government's position that he Defendant's conduct is deserving of an upward variance for all of the reasons stated above.

                                          Respectfully submitted,

                                          MARKENZY LAPOINTE
                                          UNITED STATES ATTORNEY

By:    */s/ Abbie D. Waxman*
           Abbie D. Waxman
           Assistant United States Attorney
           Florida Bar No.: 109315
           99 NE 4th Street
           Miami, Florida 33132-2111
           Phone: (305) 961-9240
           Email: Abbie.Waxman@usdoj.gov

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing was filed with the Court and delivered to counsel of record using CM-ECF this 25th day of October 2023.

/s/ *Abbie D. Waxman*
ABBIE D. WAXMAN
Assistant United States Attorney