UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-20389-CR-ALTMAN

UNITED STATES OF AMERICA,

  Plaintiff,

v.

JULIAN JIMENEZ,

  Defendant.
  _____/

### NOTICE OF STATUS OF PSI OBJECTIONS AND RESPONSE TO GOVERNMENT'S MOTION FOR UPWARD VARIANCE

Julian Jimenez, through undersigned counsel, respectfully files this notice regarding the status of his objections to the presentence investigation report. Mr. Jimenez submits an additional objection to the final disclosure of the presentence investigation report (DE 248). Finally, Mr. Jimenez submits his response in opposition to the government's motion for an upward variance (DE 250).

**Factual Additions/Corrections to the Draft PSI**

Mr. Jimenez filed factual corrections and additions to paragraphs 47, 59, and 60 of the draft PSI (DE 245), which concern his educational and employment history. (DE 247 at 1-2). The final PSI incorporates the requested changes concerning Mr. Jimenez's educational history. (DE 248 ¶ 48). That objection is resolved. The final PSI does not incorporate the requested correction with respect to Mr. Jimenez's employment at FDC. The government took no position with respect to this correction. (DE 250 at 3).

1

**Final PSI ¶ 30: Permanent or Life-Threatening Bodily Injury**

Mr. Jimenez objected to the application of a 4-level enhancement for permanent bodily injury, requesting the Court adopt the joint recommendation of the parties to apply a 2-level enhancement for serious bodily injury. (DE 247 at 2). In its response, the government acknowledged the agreement of the parties on this point. Accordingly, the issue is resolved as between the parties, but the final PSI does not reflect that agreement.

**Final PSI ¶ 31: Offer or Receipt of Anything of Pecuniary Value**

The draft disclosure of the PSI did not include a 4-level enhancement pursuant to USSG § 2A2.1(b)(2); following the draft disclosure, the Probation Officer emailed the parties, stating that he intended to include that enhancement. At the time of Mr. Jimenez's initial objections to the PSI, the Probation Officer had not yet amended the PSI accordingly.

Nonetheless, Mr. Jimenez filed an objection to the application of that enhancement, noting that the parties agreed not to seek that enhancement, and requesting that the Court honor the parties' agreement. (DE 247 at 3-4). The final PSI now includes that enhancement at paragraph 31, and indicates in the addendum that on October 4, 2023, the date of the draft disclosure, AUSA Waxman "contacted the undersigned officer and informally objected to the PSR insofar as it did not include a four-level enhancement under § 2A2.1(b)(2)...." (DE 248-1).

In its response to Mr. Jimenez's objections, however, the government recognizes that the parties agreed to recommend a calculation of the guidelines that

does not include this enhancement. (DE 250 at 3). Accordingly, the issue is resolved as between the parties, but the final PSI does not reflect that agreement.

**Final PSI ¶ 73: Impact of the Plea Agreement**

Paragraph 73 of the final PSI states: "Should the Court apply the guideline calculations recommended by the parties, the defendant's resulting total offense level would be level 37, yielding an advisory guideline range of 210 to 262 months."

This is incorrect. The parties agreed to jointly recommend that the applicable base offense level under USSG § 2A2.1 is level 33; a 2-level increase for serious bodily injury applies; thereby resulting in an adjusted offense level of 35; and a total offense level of 33, after accounting for a 2-level decrease for acceptance of responsibility. (DE 206 ¶ 8). Mr. Jimenez falls within criminal history category I, with zero criminal history points. (Final PSI ¶ 40). Accordingly, should the Court apply the guideline calculations recommended by the parties, the defendant's advisory guideline range as to Counts 1 and 2 would be 135 to 168 months.

**The Government's Motion for an Upward Variance Should be Denied**

The government argues that Mr. Jimenez should not receive a downward variance and, instead, should receive an upward variance because, they claim, his offense was "sophisticated" and "required independent plan and thought in order to accomplish." (DE 250 at 4-5). This argument is unavailing and is not supported by the evidence in this case.

Mr. Jimenez does not deny that his offense was serious. It was not, however, sophisticated, and he was not responsible for the planning it involved. As the

3

government acknowledged at the trial of co-defendant Serrano, Mr. Jimenez was the "sucker" left holding the gun, while Serrano recruited Mr. Jimenez, planned the offense, and provided Mr. Jimenez with the firearm after they arrived in Florida (*See* DE 207 at 2). Indeed, Serrano continued to scheme and manipulate Mr. Jimenez following their arrest. He convinced Mr. Jimenez to sign a statement that attempted to exonerate Serrano from involvement in the offense. Mr. Jimenez, once separated from Serrano, admitted that statement was not true. (DE 207 at 3).

Mr. Jimenez's participation in this offense was not sophisticated. He did as he was told by co-defendant Serrano, who was a significantly older, trusted family friend. Mr. Jimenez's decision to become involved in this serious offense was a terrible lapse in judgment. But the offense conduct is fully accounted for in the advisory guidelines and the lengthy mandatory minimum sentence which must run consecutive. An upward variance is not warranted.

**The Need to Avoid Unwarranted Sentencing Disparities**

The government further argues that an upward variance is required to avoid unwarranted sentencing disparities. In support of this contention, it points to a handful of cases from this district where the court imposed a lengthy term of imprisonment. (DE 250 at 6-7).

Each case the government cites to, however, is readily distinguishable in critical respects from the one before this Court. Most of the defendants in those other cases had extensive and serious criminal backgrounds. Unlike this one, some of those cases involved more than one victim. Many of the cases involved multiple violent

4

incidents, resulting in a series of charges. Several of the cases cited involved convictions after trial, rather than a guilty plea.

A synopsis of the cases and their relevant differences is included below.

- *United States v. Thomas Daniels*, Case No. 20-CR-20138-RNS: defendant sentenced to 485 months after trial. Defendant shot two robbery victims while on bond in unrelated carjacking case. Defendant had 4 prior felony convictions, as well as probation violations. Defendant had 23 disciplinary infractions while detained at FDC, including for assault and possessing hazardous tools. Total offense level was 37 and criminal history category was IV, resulting in guideline range of 292-365 months, as well as 10-year consecutive mandatory minimum sentence.

- *United States v. James Robert Mills, Jr.*, Case No. 22-CR-20077-JEM: defendant sentenced to 310 months. Defendant pled guilty to 3 counts of attempted murder of a federal officer or person assisting a federal officer, 3 counts of forcible assault of a federal officer or person assisting a federal officer, and 2 counts of § 924(c) with discharge. Mandatory minimum sentence of 240 months was imposed, to run consecutive to sentence at the low end of the guidelines as to remaining counts.

- *United States v. Frankie David Vargas, II*, Case No. 21-CR-20479-DPG: 40-year-old defendant sentenced to 324 months. Defendant charged with Hobbs Act robbery with accompanying § 924(c) with brandishing, carjacking with accompanying § 924(c) with discharge, and felon in possession of a firearm.

5

Offense involved stealing a car, breaking into other cars, stealing a gun, shooting into a laundromat, robbing a gas station attendant at gunpoint, then conducting an armed home invasion in which defendant entered an apartment occupied by 3 individuals, held them at gunpoint, ordered them to produce valuables, and shot 1 victim in the chest before stealing their car. Defendant pled guilty to 2 counts of § 924(c), which required mandatory minimum sentence of 17 years, in total, as well as carjacking. Defendant then unsuccessfully moved to withdraw plea. Defendant was in criminal history category VI. The court imposed the low end of the guideline range as to the carjacking count.

- *United States v. Jeffrey Lamar Davis*, Case No. 17-CR-20917-KMW: 44-year-old defendant sentenced to 420 months. Defendant charged with 7 Hobbs Act robberies and 7 § 924(c) counts (including 6 for brandishing and 1 for discharge), which spanned approximately 2 months. Defendant had 7 prior felony convictions, including for armed burglary, burglary with assault, kidnaping with a weapon, armed home invasion, and armed robbery). Defendant pled guilty to 2 § 924(c) charges, which mandated a sentence of 420 months.

- *United States v. Marcus Talley*, 10-CR-20848-CMA: 43-year-old defendant sentenced to 384 months. Defendant charged with 5 bank robberies and 1 § 924(c) count. Defendant recruited juveniles (including homeless adolescents) to commit bank robberies while wearing fake suicide vests. Defendant

proceeded to trial and was convicted on all counts. Defendant had 9 prior felony convictions, 4 of which would constitute career offender predicates, had they not been too stale. The court found defendant malingered through competency proceedings, resulting in an enhancement for obstruction of justice.

The cases cited by the government are simply unsuitable for comparison. Each one involves offense conduct more serious than Mr. Jimenez's. And, unlike Mr. Jimenez, most of those defendants had extensive and serious criminal histories. These cases do not provide useful points for comparison and do not support an upward variance in this case.

Mr. Jimenez urges the Court, instead, to look to the information provided by JSIN for fiscal years 2018 through 2022, as set forth in his request for a downward variance. (DE 247 at 10-11). Those cases involved defendants whose guidelines were calculated pursuant to § 2A2.1, like Mr. Jimenez's, involved at least one count of § 924(c), and were in criminal history category I. The average sentence imposed for those defendants was 200 months, while the median sentence was 180 months.

WHEREFORE, for the reasons stated above and as will be further detailed at the time of sentencing, Mr. Jimenez respectfully requests that the Court sustain his objections to the PSI, deny the government's request for an upward variance, and impose a sentence below the advisory guideline range.

Respectfully Submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

By: */s/ Abigail Becker*
Assistant Federal Public Defender
Florida Bar No. 72284
150 W. Flagler Street, Suite 1700
Miami, Florida 33130
Tel: 305-530-7000
Abigail_Becker@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on **October 30, 2023**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Abigail Becker*